By the Court.—O’Gorman, J.
The action was tried at special term, and its main purpose was to obtain a decree cancelling the forfeiture of plaintiff’s 6,523 shares of the capital stock in the defendant corporation, because of his failure to pay assessments on said stock, and permitting him to redeem the stock so forfeited on his payment of the amounts due on such assessments with interest.
It is not alleged in the case on appeal that all the evidence received at the trial is set forth in the case, and therefore the findings of fact made by the learned trial judge must be assumed to have been supported by competent and sufficient evidence. From these findings of fact, it appears that plaintiff, before November, 1881, had purchased in the open market, and was, since then, the owner of 6,523 shares of the capital stock in the defendant company, which is a corporation duly created and organized by and under the laws of this state, with a capital of one million dollars, divided into 40,000 shares. The plaintiff paid, in common with the other stockholders, eight assessments on his shares. He did not pay an assessment of one dollar per share duly called for by the corporation and due on May 1, 1884, being the ninth regular assessment, and he did not pay another assessment of one dollar per share, duly called for by the companjq and payable on November 1,1884, being the tenth assessment. As to the former of these calls, on March 8, 1884, the defendant company caused to be served on plaintiff a notice in the following words : “New York, March 15,1884.—Notice is hereby given that the directors of this company, by authority specially conferred by the shareholders, hereby call for a 6 contri *10 bution or assessment ’ of one dollar per share, payable on the first day of May next. Stockholders are requested to read and conform to the stipulation on their share certificates, as failure to pay is without remedy. Interest at the rate of seven per cent, per annum will be allowed on payment made prior to 1st May.—B. E. Strong, Vice President.” About- April 15, 1884, a further notice was sent by defendant corporation to plaintiff, which was in these words: “New York, April 15, 1884.—Stockholders are reminded that after May 1, next, all certificates for shares, on which the contribution or assessment then due is unpaid, will be i null and void,’ pursuant to stipulation, indorsed on all certificates, and that the directors and company will be powerless to restore' any interest to delinquent shareholders. —B. E. Strong, Vice President. N. B. As a matter of form, the above reminder is sent to every stockholder of record; therefore, to holders ivho have paid the ‘ contribution or assessment ’ due as above on their stock, this will not be considered a notice of delinquency.” As to the latter of these calls, being for payment of an assessment on November 1, 1884, the defendant company also caused notices to be served on the plaintiff, in one of which, dated September 15, 1884, was included the following statement: “ This notice does not apply to the following certificates, which are already void for non-payment of an assessment due .May 1, last;” and the notice also contained a list of certificates of stock so forfeited, including the delinquent shares of the plaintiff. And thenceforth in all communications from the company to the plaintiff, his said delinquent shares were treated as having been forfeited. Neither of these assessments was ever paid by the plaintiff. On September 18, 1884, plaintiff was notified that all of the stock forfeited for non-payment of these assessments would be offered for sale on November 7, 1884, at a price not less than the sum due thereon and interest; and that parties desiring to re-acquire their interests could have *11 no preference upon offers for stock in excess of the minimum rate therein fixed, of §2.05 a share. The company derived its authority to make these calls and serve these notices on stockholders, from an agreement between it and them, set forth below. When the plaintiff purchased his stock in the company, he received a certificate therefor, in the same words and to the same tenor and effect as all the certificates given by the company to all others of their stockholders. On each of these certificates the following words were indorsed: u The capital stock of this company, having been issued full paid for property, pursuant to law, this certificate is issued and received with the understanding, and the holder hereby stipulates, that the directors of this company may from time to time, but at intervals of not less than six months, make calls on certificate holders for contributions or assessments, of not more than one dollar each per share, and to an amount not exceeding ten dollars per share in the aggregate. The payment of such calls to be optional with the holder, but the failure to pay any such call when due and payable—time being of the essence of this stipulation—shall be, and be taken to be, a relinquishment by the holder of the shares on which payment shall so fail to be made, and this certificate, or any interest thereunder in regard to such shares, shall be null and void.” On or about September 15, 1884, and November 7,1884, and subsequently, the defendant company assumed to forfeit plaintiff’s stock for non-payment of these assessments, and on the latter day advertised a sale of all its delinquent stock, including all the stock of the plaintiff, at a minimum price of §2.05 per share, but none of the plaintiff’s shares ¡was then or since then ever sold by the company. Adjournments of this threatened sale took place from time to time. On January 19 and 20, 1885, plaintiff requested from the company, through its then president, an adjournment of the sale of his delinquent stock, which sale had been previously adjourned to January 20,1885, *12 and plaintiff then received from the company, acting through its then president, who was also its chief executive officer, the promise and assurance that the sale of the plaintiff’s delinquent stock should be kept alive and adjourned from time to time, until plaintiff’s arrangements were completed to protect his stock; and that plaintiff should have full and ample notice of any sale or of any adjournment affecting his stock or of anything affecting his stock. Plaintiff believed and relied on these promises and assurances. He did not subsequently receive from the company any notice of any sale or adjournment of sale of his delinquent stock; but he did. receive, in answer to his telegram to the president, a letter written by the secretary of the company to the effect that, at the request of plaintiff, the sale of the delinquent stock which had been rendered null and void for his non-payment of assessments, was further adjourned to the 20th of January, 1885. In June, 1886, he made formal protest, in writing, against any forfeiture of his stock as illegal, and against any transfer of the same. Plaintiff never made any tender to the company of the amounts due and unpaid on account of these two assessments, or either of them, and tiffs action was begun by him on July 16, 1886.
The learned trial judge held, as conclusions of law, that the stipulation having been assented to by all the stockholders, was valid and binding on the plaintiff; that the failure of the plaintiff to pay the assessments did not vest the title to his stock in the company, so that it could re-issue it; that the effect of the forfeiture was simply to terminate the right, title and interest of the plaintiff as holder of said stock, to any interest in the corporate property ; that plaintiff’s delinquent stock did not become the property of the company, nor was there any power given to or in the company to sell the shares of stock held by him, or to dispose of them in any way; and that plaintiff was entitled to be relieved of his forfeiture, on payment of the amounts due by him on the assessments, with interest.
*13 The contention on this appeal is, whether, it being ccneeded that the failure of the plaintiff to pay the assessments did work a forfeiture of his stock, and that such forfeiture terminated his right and title as holder of the stock to any interest in the corporate property, the inference is not legitimate and inevitable that the right and title to the stock thus forfeited did vest in the company at the instant on which the forfeiture took place, so that the company could reissue it, or sell it, or dispose of it in any other lawful way, free and discharged from any adverse claim of the plaintiff.
In considering this question, it is proper to give consideration and due effect to the language of the stipulation itself which provides expressly “ that the failure to pay calls when due,—time being of the essence of the stipulation,—shall be, and be taken to be, a relinquishment by the holder of the shares on which payment has not been made, and the certificate and all interest thereunder in regard to such shares shall be null and void.” It seems hard to imagine any language that could more clearly indicate the intention of the parties to this stipulation, that all possession, control of, title to, and interest in the" delinquent stock, theretofore vested in the holder, should thereafter cease to exist, and that, upon the occurrence of the act of delinquency, he, should cease to have any share or part in the property or assets of the corporation, or claim against the corporation or its stockholders. The result would also follow, that the corporation would, from that time, have no claim against him for further assessments. The stipulation was a contract between each stockholder and the corporation, and one another, and on the forfeiture by any stockholder of his interest and right to a distributive share of the corporate property, assets and profits, the rights of the corporation and of the other stockholders to share in the corporate property which he had forfeited by his delinquency, ipso facto, came into existence and vested in them.
*14 The shares of the other stockholders, who thenceforth composed the corporation, became enhanced and increased in value, by the addition of the shares which the delinquent stockholder had lost. The idea that he had forfeited his stock carries with it the conclusion that the interest in the corporate property, which his stock had represented, reverted to and became absorbed in the corporation and its stockholders. Their right to have and enjoy that increase was valuable, and became vested in them and each of them, and of that right, they could not be divested, without their own consent or due process of law. Morawetz on Private Corporations, § 316. They might have consented to waive their claims to share in the interest of the delinquent stockholder, which he had forfeited, on payment by him of the assessment due, and interest.
They did, for a considerable time, give plaintiff ample opportunity to recover his forfeited stock on such terms, or terms almost as easy. But he took no steps whatever to avail himself of such opportunity, and the non-delinquent stockholders continued, on all occasions, to assert the right of the company to treat the plaintiff’s stock as forfeited and null and void, as provided for in the stipulation. Thus, whether the stockholders who paid the assessments did or did not sell the forfeited stock, or re-issue it, was not a matter in which the plaintiff had any interest. He had ceased by his own delinquency and laches, to be a stockholder, and had no rights, or interest or concern in the corporation to assert or defend.
That the stockholders in good standing had the right to sell or re-issue stock in place of the delinquent forfeited stock, would seem to follow from the extinguishment of plaintiff’s rights in that stock, even without any special authority to do so expressed in the stipulation ; but that question need not be decided here. It is enough to say that plaintiff’s rights as to that stock had *15 ceased to exist, and he had no voice in the matter and no right to object to what the corporation did with it.
But it is contended, on the part of the plaintiff, that the corporation entered into a special agreement with him not to sell his delinquent stock without notice, and that notice was not given. On that subject, the trial judge found that on January 19 and 20,1885, the plaintiff received from the company, acting through its president, the promise and assurance that the sale, of plaintiff’s delinquent stock should be kept alive and adjourned from time to time, until plaintiff’s arrangements to protect it were complete, and that he should have ample notice of any sale, and that no notice of any sale was given to plaintiff by the president. To this claim, it may be answered, that no sale of the plaintiff’s delinquent stock ever did take place; and again, that although no notice was given him by the president in person, such notice was given by the secretary of the company, in answer to the request of the plaintiff telegraphed to the president; and that the president’s promise to the plaintiff was thus substantially kept good. But the plaintiff’s delinquent stock having been forfeited and become null and void, and all his interest therein having become vested in the non-delinquent stockholders who thenceforth constituted the company, they had acquired valuable rights and interests in the share of the corporate property, represented by that stock, of which they could not be divested by the president, by virtue of any power in him inherent in his office, and the trial judge found that there was no evidence that the board of trustees ever gave him any direction of any kind relative to the delinquent stock.
The remaining question is whether, under all the circumstances of this case, the plaintiff has shown that h 3 is entitled to relief, against this forfeiture, from a court of equity.
It has been said that a court of equity abhors forfeitures. It is true that it is indisposed to aid in the in *16 fliction of a forfeiture, but it is by no means true that it always lends its active assistance in preventing forfeitures from taking effect. Where the forfeiture is clearly intended to be a mere security for payment of money (as for instance a right of entry on non-payment of rent), there it is treated as a mere security and in the nature of a penalty and relievable. But where the forfeiture arises from the breach of another covenant of a collateral nature, as for instance, a covenant to repair, although the compensation might be ascertainable, yet it has been held that courts of equity ought not to relieve, but should leave the parties to their remedy at law. Story’s Eq., §§ 1321, 1322.
On considerations of public policy also, and of the necessity of prompt performance in order to accomplish public or corporate objects, courts of equity, in cases of non-compliance by stockholders with the terms of payment of their installments, at the times prescribed, by which a forfeiture of their shares is incurred under the by-laws, have refused to interfere by granting relief against such forfeiture. Story’s Eq., § 1325; Sparks v. Liverpool, &c., 13 Ves. 433, 434; opinion of court set forth in extenso, in note to § 1325 Story’s Eq. Jur.; Pendergast v. Turton, 1 Young & Coll., New Rep., 98, 110, 112.
It seems manifest that, in cases like the case at bar, prompt and punctual payment of assessments must be essential to the success of the corporate undertakings, and that delays in making prompt and punctual payment, and the uncertainty of receiving the required funds at the time called for, would tend to perplex and paralyze the execution of its purposes and plans and produce disastrous failure of its efforts.
The consciousness that such relief against a forfeiture was attainable in such a case, even in spite of the strongest expression in the stipulation or agreement that the act by reason of which the forfeiture was incurred, was specially obnoxious, would give the delin *17 quent stockholder, as in the case at bar, full license to pay his contribution to the corporate expenses, or leave them unpaid, according to his own will and pleasure, thus throwing the weight of supplying funds to the corporation on the stockholders, with the right still retained by the delinquent stockholder to stand by, as long as he pleased, and until the better prospects of corporate success made it to his interest to renew his proprietary relations with the company.
This would seem to me to be a trifling with the obligation, and an offence against the sanctity of a contract, which it would be against public policy to encourage, and which a court of equity should refuse to protect or promote.
In the case at bar, none of the ordinary grounds for equitable interference, exist. There was nothing harsh, or sudden, oh* secret, or oppressive in the action of the company after the forfeiture of the plaintiff’s delinquent shares had taken place. There was no deception on its part—no mistake on his. His own delay in taking steps to re-instate his delinquent stock, was laches, for which no justification or excuse appears ; and his appeal to the protection of the court, unless it is due to him as a strict right, has little or no support in any reason for indulgence that is presented in the case.
In my opinion, the contract set forth in the stipulation, is clear, reasonable, and in all respects binding; and should be, in all respects, enforced without interference of a court of equity to sanction or sustain its violation.
The judgment should be reversed and a new trial ordered, with costs to appellant to abide the event.
Sedgwick, Ch. J., and Freedman, J., concurred.